UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------x
BALDEV SINGH,

                         Plaintiff,

              - against -

CITY OF NEW YORK, THE NEW YORK
CITY TAXI AND LIMOUSINE
COMMISSION, MEERA JOSHI, JENNY
MAR, and JOHN HANSEN,

                      Defendants.
--------------------------------------------------------x

**MEMORANDUM & ORDER**
19-CV-5030 (PKC) (RER)

PAMELA K. CHEN, United States District Judge:

Plaintiff asserts various claims against Defendants City of New York, the New York City Taxi and Limousine Commission (the "TLC"), and Meera Joshi (collectively, the "City Defendants"), as well as Jenny Mar and John Hansen, in relation to the revocation of Plaintiff's TLC taxi license. Currently before the Court are Defendants' three separate motions to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), and Defendant Mar's motion for sanctions and attorney's fees.

## BACKGROUND

### I.  Relevant Facts[1]

Plaintiff "is a former holder of a TLC taxicab license." (Second Amended Complaint ("SAC"), Dkt. 37, ¶ 4.) Plaintiff, an Indian American, "speaks English with a pronounced accent."

---

[1] The facts recited in this section are based on the allegations in the Second Amended Complaint, which the Court accepts as true for purposes of Defendants' motions. *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).

(*Id.* ¶¶ 38–39.)  "[T]he TLC is responsible for the regulation of the taxicab industry in New York City."  (*Id.* ¶ 11.)  Defendant Meera Joshi is a former Commissioner of the TLC.  (*Id.* ¶ 17.)

On April 13, 2016, sometime after 2:00 a.m., Plaintiff picked up Defendant Jenny Mar in Manhattan and drove her to Long Island City, Queens.  (*Id.* ¶¶ 40–41.)  Upon arriving at the requested address, Plaintiff pressed a button that tallies the total fare for the trip, which included the nighttime surcharge.  (*Id.* ¶ 43.)  "When Defendant[ ]Mar saw this, she accused Plaintiff of 'changing the fare.'"  (*Id.* ¶ 44.)  Defendant Mar then "exited Plaintiff's cab without paying the required fare" and walked towards her apartment building, despite Plaintiff telling her that he would call the police and she should remain in the cab.  (*Id.* ¶¶ 46–48.)  Plaintiff exited the cab as well and "continued instructing Defendant[ ]Mar to wait for the police."  (*Id.* ¶ 49.)  Plaintiff then called 911.  (*Id.* ¶ 50.)

As Plaintiff and Defendant Mar stood in front of Mar's building, a second cab driver, Varinder Kumar, arrived on the scene.  (*Id.* ¶¶ 51–53.)  Mr. Kumar, then unknown to Plaintiff and Defendant Mar, "explained to Defendant[ ]Mar that a cab driver cannot change the fare, and that the meter had simply tallied the total amount of the trip by adding the nighttime surcharge."  (*Id.* ¶¶ 53, 56.)  "After hearing Mr. Kumar's explanation, Defendant[ ]Mar turned and ran into her building[, and] Plaintiff followed her [into the building]."  (*Id.* ¶ 57.)  "After a short time,[2] Defendant[ ]Mar exited the building and asked Mr. Kumar for change of a twenty-[]dollar bill."  (*Id.* ¶ 58.)  "Despite receiving change, Defendant[ ]Mar walked away from [Plaintiff and Kumar] and entered her building without paying the required fee."  (*Id.* ¶ 59.)  Plaintiff again followed Defendant Mar into the building.  (*Id.* ¶ 60.)  "A portion of the interaction between Plaintiff and

---

[2] Plaintiff does not explain what transpired during this time.

Defendant[ ]Mar [inside the building] was captured on the building lobby's security video."[3]  (*Id.* ¶ 61.)  "The images in the lobby video are relatively clear[,]" but "[t]he video's audio is unclear and unintelligible."  (*Id.* ¶¶ 62–63.)  As shown on the video, Defendant Mar, after initially entering the building followed by Plaintiff, exited the building, but then "almost immediately rushe[d] back inside."  (*Id.* ¶ 65.)  Also as shown on the video, Plaintiff followed her out of the building and then back inside a second time.  (Video; *see also* SAC, Dkt. 37, ¶ 66.)  Plaintiff then followed Defendant Mar to a door in the back of the lobby but stopped at the door, while Defendant Mar went through the back door.  (SAC, Dkt. 37, ¶¶ 66–67.)  Plaintiff exited Mar's building through the front door and called the police.  (Video; SAC, Dkt. 37, ¶ 68.)  Plaintiff spoke to Mr. Kumar, who was still outside, but said that he could not wait with Plaintiff for the police to arrive.  (SAC, Dkt. 37, ¶¶ 70–72.)  A short time later, Plaintiff left the scene when the police did not arrive.  (*Id.* ¶ 73.) Defendant Mar did not call the police during the entire interaction.  (*Id.* ¶ 69.)

Later that day, Defendant Mar filed a police report.  (*Id.* ¶ 74.)  The report stated that Defendant Mar paid the fare before exiting the cab and that Plaintiff threatened and harassed her

---

[3] The video was submitted as Exhibit C to Plaintiff's original complaint and Exhibit D to the SAC (Compl., Dkt. 1, ¶ 89; SAC, Dkt. 37, ¶ 106), and was hyperlinked in Defendant Mar's letter brief (Dkt. 20, at 2).  The Second Circuit has not addressed the issue of "whether [Federal Rule of Civil Procedure] 10(c), which provides that a 'written instrument' included as an exhibit to a pleading 'is a part of the pleading for all purposes,' extends to videos."  *Garcia v. Does*, 779 F.3d 84, 87 n.2 (2d Cir. 2015).  However, courts, including the Second Circuit, have considered videos submitted by parties when the parties do not contest the inclusion of a video in a court's review of the pleading.  *See id.*; *Hershey v. Goldstein*, 938 F. Supp. 2d 491, 498 n.1 (S.D.N.Y. 2013) (considering video footage submitted by defendant in support of motion to dismiss where plaintiff had referred to video in the complaint and stated that the video was incorporated by reference in motion to dismiss briefing); *see also Gersbacher v. City of New York*, 134 F. Supp. 3d 711, 720 (S.D.N.Y. 2015) (collecting cases).  Here, the Court considers the video because Plaintiff expressly incorporated it by reference in his complaint and attached it, and because the video is integral to Plaintiff's due process claims against the City Defendants and Defendant Mar, which assert that Defendant Mar submitted the allegedly doctored video during the TLC proceeding that resulted in Plaintiff losing his TLC license.

"while attempting to collect a 'tip.'" (*Id.* ¶¶ 75–76.)  Approximately ten days later, Defendant Mar filed a report with New York City's 311 information line stating the same as the police report. (*Id.* ¶¶ 77–78.)

On June 1, 2016, the TLC filed a petition with the Office of Administrative Trials and Hearings (the "OATH"), seeking to revoke Plaintiff's TLC license under Section 80-12 of Title 35 of the Rules of the City of New York ("Section 80-12"), which was previously enacted as Section 54-12. (Petition, Dkt. 22-1.)[4]  The petition stated that Plaintiff "threatened, harassed, and abused the complaining witness, a female passenger, by screaming at her, telling her that she 'deserved to be raped' because she was 'out late' and that she 'was out to have sex, and [she was] looking for a man,'" and that Plaintiff "threatened use of physical force against the complaining witness by throwing punches in the air." (*Id.* (alteration in original).)  On July 27, 2016, a hearing was held before Administrative Law Judge Astrid Gloade (the "ALJ"). (SAC, Dkt. 37, ¶¶ 86–87.) Both Plaintiff and Defendant Mar testified at the hearing. (*Id.* ¶¶ 88, 114–15.)  Defendant John Hansen represented Plaintiff at the hearing. (*Id.* ¶ 32.)  The ALJ also reviewed the lobby video, to which Defendant Hansen did not object. (*Id.* ¶¶ 94, 106.)  At the hearing, Defendant Mar denied that a second cab driver, Kumar, was at the scene. (*Id.* ¶ 90.)  Defendant Hansen "did not subpoena or otherwise secure" Kumar's testimony prior to the hearing. (*Id.* ¶ 91.)  On August 12, 2016, the ALJ issued a Report and Recommendation, finding that Plaintiff had threatened, harassed, and abused Defendant Mar and, in so doing, had acted against the best interest of the public under Section 80-12. (Report and Recommendation, Dkt. 22-3, at 1.)  The ALJ found Defendant Mar's testimony to be credible and corroborated by the lobby video, and recommended the revocation of

---

[4] The exhibits referenced in Plaintiff's SAC were not filed with the SAC. (*See generally* SAC, Dkt. 37.)  Therefore, the Court refers to the exhibits attached to the First Amended Complaint. (*See* Dkts. 22–1–6.)

Plaintiff's license and a $1,350 fine.  (*Id.* at 1, 4.)  The Report and Recommendation was adopted

by Defendant Joshi as the Commissioner of the TLC and Chair of the TLC Board.  (SAC, Dkt. 37,

¶ 108; Commissioner's Decision, Dkt. 22-4.)  Plaintiff then appealed the decision to the Executive

Board of the TLC, which affirmed Defendant Joshi's decision on December 8, 2016.  (SAC, Dkt.

37, ¶¶ 110–11.)

On December 15, 2016, Plaintiff commenced an Article 78 proceeding in state court,

challenging the revocation of his license and the imposition of the fine.[5]  (*Id.* ¶ 112; Article 78

Petition, Dkt. 53-1, at ECF[6] 2–21.)  Plaintiff argued in the Article 78 proceeding that Defendant

Hansen committed "malpractice and ineffective assistance of counsel by failing to secure" the

testimony of Mr. Kumar.[7]  (Article 78 Petition, Dkt. 53-1, at ECF 5.)  Plaintiff also argued that the

ALJ's findings were "without sound basis" on the grounds that (1) the ALJ wrongly invoked

Section 54-14(e) of the Rules of the City of New York; (2) Plaintiff's conduct did not constitute

"threats, harassment or abuse"; (3) the complaining witness was not credible; and (4) the

revocation of Plaintiff's license was excessive.  (*Id.* at ECF 7–11.)  The Appellate Division

---

[5] The Court takes judicial notice of Plaintiff's Article 78 Petition, the attachments thereto, and the Appellate Division decision in the Article 78 proceeding.  *See Missere v. Gross*, 826 F. Supp. 2d 542, 553 (S.D.N.Y. 2011) (taking judicial notice of an Article 78 proceeding in resolving a motion to dismiss).  "It is well established that a district court may rely on matters of public record in deciding a motion to dismiss under Rule 12(b)(6)."  *Id.* (internal quotation marks and citations omitted); *see also Almanzar v. City of New York*, No. 16-CV-2696 (ALC), 2017 WL 4330375, at *5 n.2 (S.D.N.Y. Sept. 27, 2017) (taking judicial notice of the OATH and Article 78 proceedings) (collecting cases).

[6] Citations to "ECF" refer to the pagination generated by the Court's CM/ECF docketing system and not the document's internal pagination.

[7] Plaintiff alleged that, during the hearing, he "asked the Administrative Law Judge to give him an opportunity to bring the 2nd taxicab driver to testify as a witness and the Judge denied the request," and that Mr. Kumar "could not be present at the hearing on that day because he had an emergency."  (Article 78 Petition, Dkt. 53-1, at ECF 5.)

dismissed Plaintiff's petition on March 1, 2018, holding that substantial evidence supported a finding that Plaintiff had "threatened and harassed a passenger where the passenger's testimony and security video footage demonstrated that [Plaintiff] shouted sexual threats at the passenger, and chased her through the building's lobby while screaming obscenities, forcing her to hide in fear." (Appellate Division Decision, Dkt. 53-1, at ECF 23–24.)

## II.   Procedural History

Plaintiff filed this action on September 4, 2019. (Complaint, Dkt. 1.) Defendant Hansen and the City Defendants filed separate pre-motion conference requests relating to their anticipated motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkts. 13, 17.) On December 5, 2019, the Court denied the requests as unnecessary and granted the City Defendants and Defendant Hansen leave to file their respective motions to dismiss. (Dec. 5, 2019 Order.)

On December 6, 2019, Defendant Mar sought leave to file a motion to dismiss both claims against her, namely, abuse of process and tortious interference under state law. (Dkt. 20.) On December 10, 2019, the Court set a briefing schedule and an oral argument date on the single issue of Defendant Mar's immunity as a witness. (Dec. 10, 2019 Order.) Plaintiff filed his first amended complaint on December 19, 2019. (First Amended Complaint, Dkt. 22.) After Plaintiff and Defendant Mar had briefed the witness immunity issue in Mar's motion, but before the scheduled oral argument, Plaintiff requested leave to file a second amended complaint, adding, *inter alia*, federal claims against Defendant Mar under 42 U.S.C. §§ 1983 and 1985 (Dkt. 32-1), which the Court granted (Feb. 13, 2020 Order). On February 18, 2020, the Court held an oral argument during which the Court reserved decision on Mar's motion to dismiss all claims against her, including the newly added federal claims, and set an additional briefing schedule. (Feb. 18, 2020

Minute Entry.)  Plaintiff then withdrew his state law claims against Defendant Mar (Dkt. 36) and filed the SAC, which is the operative complaint, on February 23, 2020 (SAC, Dkt. 37).

The SAC alleges the following claims:  (1) First Cause of Action—due process violation against the City Defendants, pursuant to § 1983, based on the unintelligibility of Plaintiff's testimony at the OATH hearing; (2) Second Cause of Action—denial of equal protection against the City Defendants, pursuant to § 1983, based on the unintelligibility of his testimony at the OATH hearing; (3) Third Cause of Action—conspiracy to deprive equal protection against the City Defendants, pursuant to § 1985, based on the unintelligibility of Plaintiff's testimony at the OATH hearing; (4) Fourth Cause of Action—due process violation against the City Defendants, pursuant to § 1983, based on the ALJ's alleged reliance on an erroneous finding that Plaintiff had previously violated TLC regulations; (5) Fifth Cause of Action—denial of equal protection against the City Defendants, pursuant to § 1983, based on the ALJ's alleged reliance on an erroneous finding that Plaintiff had previously violated TLC regulations; (6) Sixth Cause of Action—due process violation against the City Defendants, pursuant to § 1983, based on the introduction at the OATH hearing of an allegedly doctored videotape of the incident between Plaintiff and Defendant Mar; (7) Seventh Cause of Action—due process violation against Defendant Mar, pursuant to § 1983, relating to the allegedly doctored videotape; (8) Eighth Cause of Action—tortious interference with Plaintiff's business relationship with the TLC against Defendant Mar, pursuant to § 1983, relating to Defendant Mar's testimony at the OATH hearing and the allegedly doctored videotape; and (9) Ninth Cause of Action—legal malpractice against Defendant Hansen, under New York common law, based on the failure to call Mr. Kumar as a witness at the OATH hearing. (SAC, Dkt. 37, ¶¶ 113–287.)  The City Defendants' and Defendant Hansen's motions to dismiss were fully briefed on April 27, 2020.  (Dkts. 47, 51, 54.)  Defendant Mar's motion to dismiss was

fully briefed on April 10, 2020 (Dkts. 20, 23, 28, 42, 43), and her motion for sanctions was fully briefed on May 15, 2020 (Dkts. 62, 63, 70).

## LEGAL STANDARDS

### I.     Federal Rule of Civil Procedure 12(b)(6)

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citation omitted).

Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.* at 679 (citation omitted).  In addressing the sufficiency of a complaint, courts are required to accept the well-pleaded factual allegations contained within the complaint as true, *see Bldg. Indus. Elec. Contractors Ass'n v. City of New York*, 678 F.3d 184, 187 (2d Cir. 2012), but "need not credit conclusory statements unsupported by assertions of facts or legal conclusions and characterizations presented as factual allegations," *In re Livent, Inc. Noteholders Sec. Litig.*, 151 F. Supp. 2d 371, 404 (S.D.N.Y. 2001) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).  Additionally, a court "need not feel constrained to accept as truth conflicting pleadings that make no sense, or that would render a claim incoherent, or that are contradicted either by statements in the complaint itself or by documents upon which its pleadings rely, or by facts of which the court may take judicial

notice." *Id.* at 405–06 (citing *Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1095 (2d Cir. 1995)).  At the pleadings stage, a court must limit its inquiry to the facts alleged in the complaint, the documents attached to the complaint or incorporated therein by reference, and "documents that, while not explicitly incorporated into the complaint, are 'integral' to [the] plaintiff's claims and were relied upon in drafting the complaint."  *Id.* at 404 (citing *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 44 (2d Cir. 1991)).

## II.     Federal Rule of Civil Procedure 12(b)(1)

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it."  *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) (citing Fed. R. Civ. P. 12(b)(1)).  "The standard for reviewing a 12(b)(1) motion to dismiss is essentially identical to the 12(b)(6) standard," *Allstate Ins. Co. v. Elzanaty*, 916 F. Supp. 2d 273, 286 (E.D.N.Y. 2013), except that "[a] plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists," *Makarova*, 201 F.3d at 113.  Furthermore, "jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." *APWU v. Potter*, 343 F.3d 619, 623 (2d Cir. 2003) (internal quotation marks, alterations, and citation omitted).  In adjudicating a motion to dismiss for lack of subject matter jurisdiction, the court "may refer to evidence outside the pleadings." *Makarova*, 201 F.3d at 113.

## DISCUSSION

## I.     The City Defendants' Motion to Dismiss

Plaintiff asserts against the City Defendants various Fourteenth Amendment claims of equal protection and due process under 42 U.S.C. § 1983 ("Section 1983"), and a conspiracy claim under 42 U.S.C. § 1985 ("Section 1985").  (SAC, Dkt. 37, ¶¶ 113–215.)  The City Defendants seek

to dismiss the claims on the grounds that (1) the Court lacks subject matter jurisdiction under the *Rooker-Feldman* doctrine; (2) *res judicata* bars Plaintiff's claims; and (3) Plaintiff has failed to state cognizable Section 1983 claims.   (*See generally* The City Defendants' Brief ("City Br."), Dkt. 52.)

### A.    The *Rooker-Feldman* Doctrine

The *Rooker-Feldman* doctrine, growing out of *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983), holds that federal district courts lack subject matter jurisdiction to hear "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005).  In *Hoblock v. Albany County Board of Elections*, the Second Circuit clarified the four requirements for application of the *Rooker-Feldman* doctrine as follows:

> First, the federal-court plaintiff must have lost in state court.  Second, the plaintiff must complain of injuries caused by a state-court judgment.  Third, the plaintiff must invite district court review and rejection of that judgment.  Fourth, the state-court judgment must have been rendered before the district court proceedings commenced—i.e., *Rooker-Feldman* has no application to federal-court suits proceeding in parallel with ongoing state-court litigation.

422 F.3d 77, 85 (2d Cir. 2005) (internal quotation marks and alterations omitted).

The City Defendants argue that, because Plaintiff lost in the Article 78 proceeding and now complains of injuries caused by that state-court judgment, *Rooker-Feldman* bars all of his claims in this case.  (City Br., Dkt. 52, at 5–6.)  The Court disagrees.

Plaintiff asserts due process and equal protection violations that allegedly arose from the facts: (1) that Plaintiff's hearing testimony was largely unintelligible and was not understood by the ALJ, while the ALJ understood Defendant Mar's hearing testimony (SAC, Dkt. 37, ¶¶ 137,

10

139, 142, 149–50, 170); (2) that the ALJ erroneously found that Plaintiff's TLC license had been previously suspended and revoked (*id.* ¶ 193); (3) that other drivers with similar violation histories and driving records were not subjected to the revocation of their TLC licenses (*id.* ¶¶ 200–02); and (4) that the ALJ considered the lobby video, which was allegedly edited and redacted (*id.* ¶ 212). Because these alleged injuries arose from the OATH proceeding and existed *prior* to the Article 78 proceeding in state court, they are not barred by *Rooker-Feldman*.

"[A] party is not complaining of an injury 'caused by' a state-court judgment when the exact injury of which the party complains in federal court existed *prior* in time to the state-court proceedings, and so could not have been 'caused by' those proceedings." *McKithen v. Brown*, 481 F.3d 89, 98 (2d Cir. 2007) (emphasis in original). The Article 78 proceeding merely affirmed the determinations of the administrative proceeding, but did not cause Plaintiff's injuries. *See Sindone v. Kelly*, 439 F. Supp. 2d 268, 272 (S.D.N.Y. 2006) ("[T]he injury in question derives from the state court decision when that judgment constitutes the 'source of the injury,' as opposed to being merely a court adjudication expressly affirming or otherwise leaving undisturbed a determination made by a third party that embodies the wrongful conduct the plaintiff asserts brought about the claimed harm in the first instance." (citation omitted)), *aff'd*, 254 F. App'x 58 (2d Cir. 2007). Given that "*Rooker–Feldman* does not apply to actions regarding the decisions of a state *administrative agency*," *O'Connor v. N.Y. Hous. Auth.*, No. 08-CV-3623 (CBA) (LB), 2010 WL 1741369, at *5 (E.D.N.Y. Mar. 24, 2010) (emphasis in original), *report and recommendation adopted*, 2010 WL 1741368 (E.D.N.Y. Apr. 28, 2010), the Court has subject matter jurisdiction over Plaintiff's alleged injuries from the OATH proceeding, *see Klein v. City of New York*, No. 10-CV-9568 (PAE) (JLC), 2011 WL 5248169, at *7 n.4 (S.D.N.Y. Oct. 28, 2011) ("Klein's grievances have existed in their 'exact form' since March 9, 2004 the date on which the [teachers'

11

union] informed Klein of its decision to forgo Step 4 grievance arbitration.  Since the [union's] decision predates the state court judgment, the Court should not conclude that the Article 78 proceedings caused the injuries on which Klein bases his claims." (citation omitted)), *report and recommendation adopted*, 2012 WL 546786 (S.D.N.Y. Feb. 21, 2012).

The City Defendants argue that Plaintiff's new federal claims are inextricably intertwined with the state-court judgment in the Article 78 proceeding.  (City Br., Dkt. 52, at 4–5.)  However, the Second Circuit has clarified that "the phrase 'inextricably intertwined,' as it derived from *Feldman*, 'has no independent content' and ha[s] led lower federal courts, including the Second Circuit, to apply *Rooker-Feldman* too broadly."  *Sindone*, 439 F. Supp. 2d at 272 (quoting *Hoblock v. Albany Cty. Bd. of Elections*, 422 F.3d 77, 86–87 (2d Cir. 2005)).  Indeed,

> under the *Hoblock* analysis, even if [plaintiff's] federal claim sought to deny and reverse the state court judgment, his claim would be "independent" for *Rooker-Feldman* purposes to the extent that the "source of the injury" he complains about emanates in the first instance from [the administrative proceedings], and not collaterally from the state court judgment rendered in the Article 78 proceedings affirming [the administrative action].

*Id.* at 274.  "[B]ecause the state court itself did not take the initial action to [revoke Plaintiff's license], nor did the [TLC] act under compulsion of a state court order when it made the decision" to revoke Plaintiff's license, Plaintiff's federal claims are independent from the state-court judgment.  *See id.*

Accordingly, the Court finds that Plaintiff's injuries were not caused by the state-court judgment in the Article 78 proceeding and that the Court has subject matter jurisdiction over Plaintiff's claims.

### B.    *Res Judicata*

"A court may consider a *res judicata* defense on a Rule 12(b)(6) motion to dismiss when the court's inquiry is limited to the plaintiff's complaint, documents attached or incorporated

therein, and materials appropriate for judicial notice." *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 498 (2d Cir. 2014) (citation omitted). "The doctrine of claim preclusion, or *res judicata*, bars the subsequent litigation of any claims that were or could have been raised in a prior action." *Citigroup, Inc. v. Abu Dhabi Inv. Auth.*, 776 F.3d 126, 128 n.1 (2d Cir. 2015) (citation omitted). The party asserting *res judicata* bears the burden of proving: "(1) the previous action involved an adjudication on the merits; (2) the previous action involved the plaintiffs or those in privity with them; [and] (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action." *Bey v. City of New York*, 454 F. App'x 1, 4–5 (2d Cir. 2011) (summary order) (alteration in original) (citation omitted); *see also Monahan v. N.Y.C. Dep't of Corr.*, 214 F.3d 275, 285 (2d Cir. 2000). "Congress has specifically required all federal courts to give preclusive effect to state-court judgments whenever the courts of the State from which the judgments emerged would do so." *Merced v. Ponte*, No. 17-CV-4918 (KAM), 2019 WL 1208791, at *6 (E.D.N.Y. Mar. 13, 2019) (quoting *Allen v. McCurry*, 449 U.S. 90, 96 (1980)), *aff'd*, 807 F. App'x 127 (2d Cir. 2020); *see also* 28 U.S.C. § 1738 (requiring that judicial proceedings of any court in one state have "the same full faith and credit in every court within the United States").

The City Defendants argue that the Article 78 proceeding precludes Plaintiff's claims here. (City Br., Dkt. 52, at 6–9.)  The parties do not dispute that the Article 78 proceeding involved the same parties, namely, the City Defendants and Plaintiff, or those in privity with them.  (*See* Plaintiff's Opposition Brief to the City Defendants' and Defendant Hansen's Motions to Dismiss ("Pl.'s City and Hansen Opp."), Dkt. 54, at 8–11.)  Therefore, the Court discusses only the first and third elements.

### 1. Adjudication on the Merits

"It is well-settled that Article 78 proceedings constitute 'an adjudication on the merits' for purposes of a res judicata analysis." *Miller v. City of New York*, No. 17-CV-4198 (RJD), 2019

WL 2164100, at *2 (E.D.N.Y. May 10, 2019) (citation omitted).  However, Plaintiff argues that a "substantial evidence" review does not constitute an adjudication on the merits.  (Pl.'s City and Hansen Opp., Dkt. 54, at 8–9.)  Plaintiff misconstrues the standard.  The limited nature of the inquiry in Article 78 proceedings does not vitiate the preclusive effect of the proceeding.  "It is established that an Article 78 proceeding 'constitutes a wholly adequate post-deprivation hearing for due process purposes.'"  *Merced*, 2019 WL 1208791, at *7 (quoting *Locurto v. Safir*, 264 F.3d 154, 175 (2d Cir. 2001)).  "There is no *per se* rule against giving Article 78 proceedings preclusive effect provided that the relief sought in the subsequent proceeding was available to the plaintiff in the prior action."  *Smith v. Cuomo*, No. 06-CV-3181 (JS) (WDW), 2007 WL 9710323, at *6 (E.D.N.Y. Sept. 30, 2007) (citations omitted) (rejecting plaintiff's argument that "Article 78 proceedings are limited, summary-type proceedings").  Therefore, the City Defendants have proven the first element of the *res judicata* inquiry, *i.e.*, that "the previous action involved an adjudication on the merits."  *Bey*, 454 F. App'x at 4–5; *see O'Dette v. Fisher*, No. 12-CV-2680 (ILG) (SMG), 2014 WL 6632470, at *4–5 (E.D.N.Y. Nov. 21, 2014) (finding that the Article 78 proceeding that conducted a substantial evidence review was adjudicated on the merits).

### 2.  Claims That Were, or Could Have Been, Raised

"Res judicata . . . is not limited to only claims that were actually litigated[;] . . . [r]ather, it bars all legal claims that a party could have raised in the prior litigation."  *Merced*, 2019 WL 1208791, at *9 (alterations in original) (citation omitted).  "Even claims based upon different legal theories are barred provided they arise from the same transaction or occurrence."  *Purcell v. City of New York*, No. 18-CV-3979 (PKC) (RLM), 2018 WL 3733941, at *3 (E.D.N.Y. Aug. 6, 2018) (quoting *L-Tec Elecs. Corp. v. Cougar Elec. Org., Inc.*, 198 F.3d 85, 88 (2d Cir. 1999)).  Courts in this Circuit have generally found that "violations of the Due Process and Equal Protection Clauses of the Fourteenth Amendment . . . could have been raised in [Article 78 proceedings.]"

*See, e.g.*, *Corbett v. City of New York*, No. 18-CV-7022 (KPF), 2019 WL 2502056, at \*5 (S.D.N.Y. June 17, 2019), *aff'd*, __ F. App'x __, 2020 WL 2988856 (2d Cir. 2020); *Kubicek v. Westchester County*, No. 08-CV-372 (ER), 2013 WL 5423961, at \*7 n.11 (S.D.N.Y. Sept. 27, 2013) (explaining that, although a plaintiff may not be able to obtain the same relief in an Article 78 proceeding as in a § 1983 action, Article 78 proceedings still provide an adequate vehicle for asserting due process claims); *Quadrozzi Concrete Corp. v. City of New York*, No. 03-CV-1905 (LAP), 2004 WL 2222164, at \*4 (S.D.N.Y. Sept. 30, 2004) ("Plaintiff's equal protection claims in this action could have been raised in the Article 78 proceeding."), *aff'd*, 149 F. App'x 17 (2d Cir. 2005) (summary order); *see also Collard v. Incorporated Village of Flower Hill*, 759 F.2d 205, 207 (2d Cir. 1985) ("[U]nder New York law, the constitutional claims that form the gravamen of the district court action could have been brought in the earlier state proceeding.").

"Res judicata only applies if the forum in which [] the underlying action or proceeding was brought had the power 'to award the full measure of relief sought in the later litigation.'" *New Phone Co., Inc. v. N.Y.C. Dep't of Info. Tech. & Telecomms.*, No. 03-CV-3978 (JG) (KAM), 2006 WL 6908254, at \*19 (E.D.N.Y. Aug. 25, 2006) (citations omitted), *aff'd sub nom. New Phone Co., Inc. v. N.Y. Dep't of Info. Tech. & Telecomms.*, 355 F. App'x 503 (2d Cir. 2009).  Therefore, "a state court judgment in an Article 78 proceeding has preclusive effect on subsequent federal claims for declaratory and injunctive relief when those claims are predicated on the same transaction out of which the first state action arose."  *Corbett*, 2019 WL 2502056, at \*5 (citation omitted).  However, because "[a] state court reviewing an administrative determination pursuant to CPLR article 78 cannot award compensatory damages[,] . . . a prior article 78 proceeding will not serve to bar a separate, related action for monetary damages."  *New Phone Co.*, 2006 WL 6908254, at \*19 (internal citations omitted) (collecting cases).

15

Plaintiff argues that the claims brought here are "completely independent and distinct from those in the earlier proceeding" and do not "share the same gravamen, foundation facts or factual groupings as the claims and facts in plaintiff's earlier Article 78 proceeding." (Pl.'s City and Hansen Opp., Dkt. 54, at 9–10.) Plaintiff again misconstrues the standard. The dispositive question is not simply what claims or arguments Plaintiff made in the Article 78 proceeding, but what claims and arguments Plaintiff *could* have asserted in that proceeding. Here, Plaintiff fails to argue or address why Plaintiff's due process and equal protection claims could not have been brought in the Article 78 proceeding, at which he challenged the sufficiency of the ALJ's findings. *See Merced*, 2019 WL 1208791, at *9 ("The state court was authorized to . . . review whether the relevant agency acted illegally, unconstitutionally, or in excess of its jurisdiction[.]" (internal quotation marks and citation omitted)). Plaintiff cites to *Cantore v. City of New York*, No. 16-CV-2748 (PGG), 2017 WL 11501442 (S.D.N.Y. Sept. 15, 2017), and argues that, unlike the plaintiff in *Cantore*, who brought the same claims and made the same arguments, Plaintiff is bringing different claims that do not "share the same gravamen, foundation facts or factual grouping." (Pl.'s City and Hansen Opp., Dkt. 54, at 10.) This argument, however, is a red herring because *Cantore* does not address the issue here, namely, whether preclusive effect can be given to a claim or argument that could have been, but was not, made in the Article 78 proceeding.

Rather, Plaintiff's lawsuit in this Court and his Article 78 petition both arose from the same transaction, namely, the OATH proceeding and the ALJ's rulings, and all of the claims and arguments that Plaintiff has asserted here could have been raised in the Article 78 proceeding. *See Miller*, 2019 WL 2164100, at *2 ("Miller's constitutional claims seeking declaratory relief arise out of the 'same transaction or series of transactions' as those at issue in his Article 78 proceeding and thus *could have been raised* in his Article 78 proceeding." (emphasis in original) (citation

16

omitted)). Therefore, Plaintiff's claims for declaratory and injunctive relief (SAC, Dkt. 37, at ECF 31–32) are barred by *res judicata*, but his claims for money damages (*id.* at ECF 34) are not. *See id.* (finding that plaintiff's claims for declaratory relief, but not claims for money damages, were barred by *res judicata*).

The City Defendants argue that, while Article 78 proceedings only allow damages that are "incidental to the primary relief," N.Y. C.P.L.R. § 7806, New York courts now permit "hybrid" Article 78 proceedings in which plaintiffs can seek damages in a plenary action, and therefore that *res judicata* should apply to Plaintiff's claims for money damages. (The City Defendants' Reply Brief ("City Reply"), Dkt. 55, at 5–6.) However, "such hybrid proceedings are not [] available as of right, with New York courts frequently severing or dismissing claims for damages." *Best Payphones, Inc. v. Dobrin*, 410 F. Supp. 3d 457, 473 (E.D.N.Y. 2019) (internal record citation omitted). Courts in this Circuit accordingly have not held that *res judicata* bars a plaintiff's claims for money damages where the plaintiff "did not bring a hybrid action and may not have been able to in the first instance." *Id.* The City Defendants' attempt to rely on *O'Dette* (City Reply, Dkt. 55, at 5) is misguided, because there the plaintiff conceded that he could not obtain damages in the federal court action, and the court merely found that the plaintiff's claims for injunctive relief were barred by *res judicata*. 2014 WL 6632470, at *6.[8] "Under these circumstances, the Court . . . sees no reason to depart from binding Second Circuit precedent which holds that an Article 78 proceeding does not bar a subsequent civil-rights claim for damages where a plaintiff may have been barred from seeking such damages in the Article 78 proceeding." *Best Payphones, Inc.*, 410 F. Supp. 3d at 473–74 (citation omitted).

---

[8] The City Defendants' reliance on *Yeiser v. GMAC Mortgage Corp.*, 535 F. Supp. 2d 413, 422 (S.D.N.Y. 2008), is also inapposite, because the same relief was available in the prior foreclosure action, and the *Yeiser* court had no occasion to consider the situation presented here.

Accordingly, Plaintiff's §§ 1983 and 1985 claims for monetary damages are not barred by *res judicata*.

## C.      Failure to State a Claim

Plaintiff brings due process claims under Section 1983 (First, Fourth, and Sixth Causes of Action) and equal protection claims under Section 1983 (Second and Third Causes of Action) against the City Defendants, and a civil rights conspiracy claim against all Defendants under Section 1985 (Third Cause of Action).  (SAC, Dkt. 37, ¶¶ 113–215.)  The City Defendants seek to dismiss each claim on the grounds that Plaintiff has failed to state a claim.[9]

### 1.      Due Process Claims

"In a § 1983 suit brought to enforce procedural due process rights, a court must determine (1) whether a property interest is implicated, and, if it is, (2) what process is due before the plaintiff may be deprived of that interest."  *Nnebe v. Daus*, 644 F.3d 147, 158 (2d Cir. 2011) (citation omitted).  To determine what process is due, courts must examine

> [f]irst, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

---

[9] Plaintiff does not address in his opposition brief his Fourth and Fifth Causes of Action, alleging due process and equal protection claims against the City Defendants based on the ALJ's allegedly erroneous reliance on Plaintiff's violation of TLC regulations, and thus the Court deems these claims abandoned.  *See Jones Real Estate, Inc. v. Avatel Techs., Inc.*, No. 18-CV-1949 (PKC), 2019 WL 1130154, at *7 (S.D.N.Y. Mar. 12, 2019) ("A court 'may, and generally will, deem a claim abandoned when a plaintiff fails to respond to a defendant's arguments that the claim should be dismissed.'" (collecting cases)).  In addition, because the Court finds that Plaintiff fails to state a claim against the City Defendants for the reasons stated above, the Court does not address the City Defendants' other arguments.

18

*Id.* at 154 n.3 (quoting *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)). "*Mathews* is the test for both when a hearing is required (i.e., pre- or post-deprivation) and what kind of procedure is due a person deprived of liberty or property." *Brody v. Village of Port Chester*, 434 F.3d 121, 135 (2d Cir. 2005). "[P]rocedural due process is satisfied if the government provides notice and a limited opportunity to be heard prior to [the deprivation of the protected interest], so long as a full adversarial hearing is provided afterwards." *Locurto*, 264 F.3d at 171(citations omitted).

"When reviewing alleged procedural due process violations, the Supreme Court has distinguished between (a) claims based on established state procedures and (b) claims based on random, unauthorized acts by state employees." *Hellenic Am. Neighborhood Action Comm. v. City of New York ("HANAC")*, 101 F.3d 877, 880 (2d Cir. 1996) (citations omitted). "When the deprivation occurs in the more structured environment of established state procedures, [such as OATH hearings,] rather than random acts, the availability of postdeprivation procedures will not, ipso facto, satisfy due process." *Id.* "In such situations, although plaintiffs could bring their individual claims in state court under Article 78, they are not required to do so." *Pierre v. N.Y.C. Taxi & Limousine Comm'n*, No. 17-CV-973 (MKB), 2017 WL 1417257, at *3 (E.D.N.Y. Apr. 19, 2017) (internal quotation marks, alteration, and citation omitted).

The City Defendants do not contest Plaintiff's property interest in his TLC taxi license. (City Br., Dkt. 52, at 11.) The Second Circuit has also held that a taxi driver has a property interest in his TLC license and is entitled to procedural due process with respect to its revocation. *See Mordukhaev v. Daus*, 457 F. App'x 16, 20 (2d Cir. 2012) (summary order) (citations omitted). Therefore, the Court focuses on Plaintiff's theories for the due process of which he was allegedly deprived.

a.      First Cause of Action

Plaintiff claims that "a legally significant portion of his testimony [at the OATH hearing] was unintelligible, not transcribed or available for review by the ALJ, and that this deprived [P]laintiff of a meaningful opportunity to be heard and of a meaningful hearing." (Pl.'s City and Hansen Opp., Dkt. 54, at 13.) Plaintiff does not identify the specific instances where the ALJ did not understand Plaintiff's testimony or where Plaintiff's testimony was unintelligible. Based on the Court's review of the transcript of the OATH proceeding, the ALJ understood and followed Plaintiff's testimony. For example, there were moments when the ALJ interjected, clearly showing that the ALJ had followed Plaintiff's testimony. (*See, e.g.*, Transcript, Dkt. 22-2, at A118:14–15 ("[Plaintiff:] Last name, K like a, K like[.]  ALJ Gloade: King."); A123:16–A124:3.) When the ALJ missed part of Plaintiff's testimony, the ALJ asked for clarification or repetition. (*See, e.g.*, *id.* at A117:4–9.) The few times that Plaintiff's testimony was marked unintelligible in the transcript do not affect this Court's understanding of the testimony, nor, more importantly, do they indicate that the ALJ failed to hear or understand Plaintiff's testimony. When Plaintiff began his testimony and was speaking too fast, which was reflected in the transcript as unintelligible, the ALJ asked Plaintiff to slow down, and Plaintiff's testimony afterwards was clearly recorded in the transcript. (*Id.* at A113:19–25.) In one instance, Plaintiff interrupted the counsel's questioning and was asked by the ALJ to "allow [the TLC attorney] to complete the question" before he answered. (*Id.* at A128:9–14.) Otherwise, there were eight instance in Plaintiff's entire testimony that were marked as unintelligible (*id.* at A114:15–16, A130:10, A130:24, A132:5, A132:15, A132:25, A137:17), but his meaning was still readily discernible without the missing words.

In connection with Plaintiff's equal protection claims, Plaintiff argues in his opposition brief that his testimony was "riddled with 'broken' English, in many places indecipherable,

and . . . devoid of discernible meaning." (Pl.'s City and Hansen Opp., Dkt. 54, at 15.) Plaintiff points to two instances in the transcript where the ALJ asked for clarification. (*Id.* at 16.) In the first example, Plaintiff was testifying to what Defendant Mar said to him on the night of the incident, and the ALJ repeated Plaintiff's statement in an attempt to clarify what Plaintiff was saying and later asked, "I'm sorry. I am, I must ask you[,]" to which Plaintiff's attorney, who was conducting the examination, said, "We'll just leave that out." (Transcript, Dkt. 22-2, at A122:24–123:14.) There is no basis for suggesting that the ALJ did not understand Plaintiff's testimony; indeed, the ALJ repeated back exactly what Plaintiff had just testified and, when the ALJ sought additional clarification, was told by Plaintiff's counsel, in effect, that it did not matter and that Plaintiff and his counsel were "just leav[ing] it out." The second example is a colloquy between Plaintiff and the ALJ, in which Plaintiff referred to "the 21" in his testimony and the ALJ confirmed that he was referring to "Precinct twenty-one." (*Id.* at A123:16–A124:2.) Again, the ALJ's confirming what Plaintiff was referring to does not, in any way, suggest that the ALJ had trouble understanding Plaintiff's testimony because of Plaintiff's accent; in fact, this example supports the opposite conclusion.

While the Court must accept the factual allegations of a well-pleaded complaint as true, the Court need not "accept as truth conflicting pleadings that . . . are contradicted . . . by documents upon which its pleadings rely." *In re Livent, Inc. Noteholders Sec. Litig.*, 151 F. Supp. 2d at 405–06. Here, because Plaintiff's assertions that "[a] significant portion of Plaintiff's hearing testimony was unintelligible" and that "Plaintiff's testimony could not be understood by ALJ Gloade during the proceedings" (SAC, Dkt. 37, ¶¶ 114–15) are contradicted by the hearing transcript, the Court does not accept them as true. *See Kamholtz v. Yates County*, No. 08-CV-6210 (MAT), 2008 WL 5114964, at *6 (W.D.N.Y. Dec. 3, 2008) (granting motion to dismiss where plaintiff's allegations

21

were contradicted by documents incorporated by reference), *aff'd*, 350 F. App'x 589 (2d Cir. 2009). Therefore, Plaintiff has not stated a due process claim based on the ALJ's alleged failure to understand Plaintiff's testimony at the OATH hearing. *See Chen v. Mukasey*, 271 F. App'x 104, 105 (2d Cir. 2008) (summary order) (finding that petitioner "failed to establish the requisite prejudice to the outcome of his hearing to establish a due process violation" because he failed to assert misinterpretation that would have influenced the outcome); *Pokluda v. Colvin*, No. 13-CV-335 (GLS) (ESH), 2014 WL 1679801, at *5 (N.D.N.Y. Apr. 28, 2014) ("Pokluda fails to identify even one part of the transcript that is inaccurate or incomplete and/or how any part of the hearing responses or 'inaudibles' actually disadvantaged her. Hence, on its face, she cannot assert a violation of any constitutional right." (citation omitted)).[10]

Plaintiff, therefore, fails to state a due process claim against the City Defendants, and his First Cause of Action is dismissed pursuant to Rule 12(b)(6).

---

[10] Plaintiff argues that due process requires an ALJ to be provided with a language interpreter, when a witness speaks with an accent. (SAC, Dkt. 37, ¶¶ 142–44; Pl.'s City and Hansen Opp., Dkt. 54, at 13.) To the extent that a language interpreter was needed to aid the communication between the ALJ and Plaintiff, language assistance was available during the OATH proceeding under the Rules of the City of New York ("RCNY"). *See* RCNY, tit. 48, § 1-44 ("OATH will provide language assistance services to a party or their witnesses who are in need of such services to communicate at a trial or conference. . . . A request for in-person interpretation must be made at least five (5) business days before the trial or conference."); *id.* § 6-03 ("Appropriate language assistance services will be afforded to respondents whose primary language is not English to assist such respondents in communicating meaningfully. Such language assistance services will include interpretation of hearings conducted by Hearing Officers, where interpretation is necessary to assist the respondent in communicating meaningfully with the Hearing Officer and others at the hearing."). The availability of such language assistance sufficiently protects Plaintiff's right to a meaningful hearing. When "the plaintiff had available *adequate* process, [he] cannot be said to have been deprived of due process simply because [he] failed to avail [himself] of the opportunity." *Segal v. City of New York*, 459 F.3d 207, 218 n.10 (2d Cir. 2006) (emphasis in original) (internal quotation marks and citation omitted); *see also Rivera-Powell v. N.Y.C. Bd. of Elections*, 470 F.3d 458, 468 n.12 (2d Cir. 2006). Given that Plaintiff, who was represented by counsel at the OATH proceeding, did not avail himself of such assistance, Plaintiff cannot establish that he was denied due process.

            b.      Sixth Cause of Action

Plaintiff asserts that "the use of the edited, redacted and fabricated security video violated [P]laintiff's right to due process." (Pl.'s City and Hansen Opp., Dkt. 54, at 14.) Under the RCNY, Plaintiff had the opportunity to challenge the admission of evidence. *See* RCNY, tit. 48, § 6-12(f). The RCNY also provided process for Plaintiff to subpoena an unredacted version of the video, if one existed. *Id.* § 1-43. However, Plaintiff, represented by counsel, in fact agreed to the admission of the surveillance video evidence at the OATH hearing and made arguments that relied on the video.[11] (*See* Transcript, Dkt. 22-2, at A75:25–A76:2 ("[P]arties had agreed to the admission into evidence of certain documents."); *id.* at A76:14–17 ("So [Petitioner TLC's] exhibit[] in evidence is the video. It's about 34 seconds long and it's footage from security cameras from the lobby of the complaining witness'[s] residence."); *id.* at A79:22–A80:6 (Plaintiff's counsel discussing the video in opening statement).)

The Second Circuit has held that the pre-deprivation hearing held by an ALJ for TLC license revocations satisfies the basic requirements, because "[i]t afford[s] [the driver] notice of the charges against him, an explanation of the evidence supporting those charges, and an opportunity for him to present his version of the events." *Mordukhaev*, 457 F. App'x at 21; *id.* at 20–21 ("The pre-deprivation hearing 'need not be elaborate,' [] nor must it 'definitively resolve the propriety of the [deprivation].'" (second alteration in original) (citations omitted)). Here, Plaintiff was provided sufficient opportunity to subpoena evidence and present his version of the events. When "the plaintiff [has] had available *adequate* process, [he] cannot be said to have been

---

[11] Plaintiff relies on a 1997 OATH proceeding, where video evidence was admitted based on testimony from the person who made the copy of the video authenticating the video. (Pl.'s City and Hansen Opp., Dkt. 54, at 14.) However, that case does not support the proposition that evidence must be authenticated in order to be admitted, where the parties stipulate to its admission, or that video evidence must be authenticated by the person who created or took the video.

deprived of due process simply because [he] failed to avail [himself] of the opportunity." *Segal*, 459 F.3d at 218 n.10 (emphasis in original) (internal quotation marks and citation omitted); *Rivera-Powell*, 470 F.3d at 468 n.12 (explaining that the requirement that the harm alleged has occurred is analytically different from requiring plaintiff to exhaust procedural post-deprivation remedies, such as Article 78 proceedings). Therefore, since Plaintiff was afforded adequate process, even if he did not take full advantage of it, Plaintiff cannot state a due process claim. *Ferra v. Mukasey*, 268 F. App'x 34, 36 (2d Cir. 2008) (summary order) (finding that petitioner, who was represented by counsel at the administrative hearing, had the opportunity to, but did not, object to the admission of evidence and thus did not suffer a due process violation); *Zerrei v. Gonzales*, 471 F.3d 342, 346 (2d Cir. 2006) (finding the admission of evidence at administrative hearing in accordance with due process, where petitioner's counsel "voiced no objection to the admission" of the evidence, "treated the document as an authentic copy," and never attempted to challenge its accuracy).

The Court further notes that, "where a due process violation is based on an established procedure rather than a random, unauthorized act," such as here, "the availability of additional process in an Article 78 proceeding . . . is a relevant factor in the *Mathews* analysis." *Rothenberg v. Daus*, 481 F. App'x 667, 676 (2d Cir. 2012) (summary order), *as amended* (July 27, 2012). While the Court recognizes Plaintiff's interest in a proceeding that "affects [P]laintiff['s] ability to earn a livelihood," *Rothenberg v. Daus*, No. 08-CV-567 (SHS), 2014 WL 3765724, at *22 (S.D.N.Y. July 31, 2014), *on reconsideration in part*, No. 08-CV-567 (SHS), 2015 WL 1408655 (S.D.N.Y. Mar. 27, 2015), "the availability of an Article 78 procedure diminishes the risk of an erroneous deprivation because the driver receives an additional hearing that the Second Circuit has 'on numerous occasions' held to be 'a perfectly adequate post[-]deprivation remedy,'" *Pierre*, 2017 WL 1417257, at *6 (citations omitted). "Although the availability of Article 78 proceedings

24

is not an absolute relief against procedurally flawed initial hearings, it nevertheless provides a 'full adversarial hearing' to remedy error." *Id.* (citation omitted). Courts have further found that "the combination of an OATH hearing and the Article 78 procedure provide adequate process." *Id.*; *accord. Astoria Gen. Contracting Corp. v. Off. of the Comptroller of the City of N.Y.*, 159 F. Supp. 3d 385, 401 (S.D.N.Y. 2016); *see also Mordukhaev*, 457 F. App'x at 21.

Accordingly, the Court dismisses Plaintiff's Sixth Cause of Action, alleging a due process claim against the City Defendants under Section 1983 based on the admission of allegedly doctored video evidence at the OATH hearing, for failure to state a claim.

2.   <u>Equal Protection Claims</u>

The Second Circuit has recognized equal protection class-of-one claims and selective enforcement claims.

> An equal protection claim premised on selective enforcement requires a showing that "(1) compared with others similarly situated, he was selectively treated, and (2) the selective treatment was motivated by an intention to discriminate on the basis of impermissible considerations, such as race or religion, to punish or inhibit the exercise of constitutional rights, or by a malicious or bad faith intent to injure him."

*Martine's Serv. Ctr., Inc. v. Town of Wallkill*, 554 F. App'x 32, 35 (2d Cir. 2014) (summary order) (alteration and citation omitted). "To state a 'class-of-one' equal protection claim 'the plaintiff [must] allege[ ] that [he] has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.'" *Id.* (citation omitted).

> Accordingly, to succeed on a class-of-one claim, a plaintiff must establish that (i) no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and (ii) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendants acted on the basis of a mistake.

*Clubside, Inc., v. Valentin*, 468 F.3d 144, 159 (2d Cir. 2006) (internal quotation marks and citation omitted). In addition, class-of-one plaintiffs must "prove 'intentional disparate treatment,' that is,

demonstrate [that] the decisionmakers were aware that there were other similarly-situated individuals who were treated differently." *Analytical Diagnostic Labs, Inc. v. Kusel*, 626 F.3d 135, 143 (2d Cir. 2010) (citation omitted).

Like his due process claims, Plaintiff's equal protection claim is based on his allegations that his testimony was unintelligible and not understood by the ALJ, whereas Defendant Mar's testimony was intelligible, and thus Plaintiff was deprived of a meaningful opportunity to be heard because of his status as an individual who speaks English as a second language. (SAC, Dkt. 37, ¶¶ 146–74.) It is difficult to discern the precise nature of Plaintiff's class-of-one claim based on these allegations.[12] On the one hand, his claim could be read as asserting that Plaintiff was treated differently, as a non-native-English speaker, when compared to Defendant Mar, who presumably speaks unaccented English. Alternatively, Plaintiff's claim might be that, even though Plaintiff did not need or request a English-language interpreter, one should have been provided to him in order to enable the ALJ to understand Plaintiff's accented English, and that there was no rational basis for the ALJ not to use a language interpreter for this purpose. (*See* Pl.'s City and Hansen Opp., Dkt. 54, at 17.) Plaintiff's equal protection claim is, at best, contorted; even attempting to make sense of it strongly suggests its invalidity.

The City Defendants argue that the purportedly different "treatment" of Defendant Mar's and Plaintiff's testimony—*i.e.*, that an interpreter was not provided to translate Plaintiff's accented and/or broken English—does not give rise to an equal protection claim. (City Br., Dkt. 52, at 15 n.10[13]; City Reply, Dkt. 55, at 8–9.) The Court agrees. First, as explained above, the Court rejects

---

[12] Plaintiff's opposition brief neither provides a single case citation for his equal protection claim nor identifies the theory under which Plaintiff is asserting this claim. (*See* Pl.'s City and Hansen Opp., Dkt. 54, at 15–17.)

[13] The City Defendants' brief includes a statement that the different treatment "does give rise to an equal protection claim." (City Br., Dkt. 52, at 15 n.10.) However, based on the Court's

Plaintiff's argument that the transcript shows that the ALJ did not understand Plaintiff's testimony. The transcript, if anything, shows that the ALJ closely followed and understood Plaintiff's testimony. Second, Plaintiff's suggestion that, because the ALJ found Defendant Mar's testimony to be credible, the ALJ must not have been able to, or did not, understand Plaintiff's testimony (Pl.'s City and Hansen Opp., Dkt. 54, at 15–17) is "conclusory, hypothetical speculation [] not entitled to an assumption of truth on a motion to dismiss." *Solow v. Citigroup, Inc.*, 827 F. Supp. 2d 280, 289 (S.D.N.Y. 2011) (internal alterations and citation omitted); *see Whiteside v. Hover-Davis, Inc.*, No. 19-CV-6026 (CJS), 2020 WL 979785, at *4 (W.D.N.Y. Feb. 28, 2020) ("A plaintiff cannot avoid the necessity of pleading a plausible claim supported by factual allegations merely by asserting statements 'upon information and belief' without explaining the basis for the belief." (collecting Second Circuit cases)). Indeed, as Plaintiff acknowledges, "[i]t is not within [P]laintiff's control to know whether he [was] being understood by those around him." (Pl.'s City and Hansen Opp., Dkt. 54, at 17.) Furthermore, as discussed, the transcript of the OATH hearing amply demonstrates that, in fact, the ALJ fully comprehended Plaintiff's testimony but simply did not credit it in material part, when he weighed it against the other evidence presented at the hearing, which included more than just Defendant Mar's testimony. Because Plaintiff cannot sufficiently allege that he was treated differently than other similarly situated individuals, the Court dismisses Plaintiff's equal protection claim under Section 1983 for failure to state a claim.

### 3. Conspiracy Claim

To plead a Section 1985 conspiracy claim, a plaintiff must allege

(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges

---

review of the City Defendants' argument, which is further expanded upon in their reply brief, and the fact that the City Defendants seek to dismiss the Complaint in its entirety, the Court assumes that this is a typographical error.

and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.

*Robinson v. Allstate Ins. Co.*, 508 F. App'x. 7, 9 (2d Cir. 2013) (summary order) (internal quotation marks and citation omitted).  In alleging a conspiracy under § 1985, "a plaintiff must provide some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end."  *Id.* (internal quotation marks, alteration, and citation omitted).

Plaintiff has failed to provide any factual basis supporting a meeting of the minds between or amongst Defendants.  Rather, Plaintiff merely makes conclusory allegations that the ALJ, Defendant Joshi, and other TLC board members conspired to deprive Plaintiff of equal protection of the law.  (*See* SAC, Dkt. 37, ¶ 176 ("That ALJ Gloade, Defendant-Joshi and each of the members of the TLC Board did, by their above-cited actions, conspire for the purposes of depriving Plaintiff of equal protection of the law.").)  "Claims of conspiracy that are vague and provide no basis in fact must be dismissed."  *Artemov v. Ramos*, No. 18-CV-2537 (PKC) (LB), 2018 WL 2121595, at *2 (E.D.N.Y. May 8, 2018) (collecting cases); *see Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011) (affirming dismissal of conspiracy claim where plaintiff "offer[ed] not a single fact to corroborate her allegation of a 'meeting of the minds' among the conspirators").  Accordingly, the Court dismisses Plaintiff's Section 1985 conspiracy claim for failure to state a claim.

## II.    Defendant Mar's Motion to Dismiss

After two amendments of the Complaint, Plaintiff now asserts two Section 1983 claims against Defendant Mar—one in the Seventh Cause of Action based on alleged "abuse of process" and the other in the Eighth Cause of Action for tortious interference.  (*See* SAC, Dkt. 37, ¶¶ 216–47.)  Both causes of action are based on Defendant Mar allegedly testifying falsely at the OATH

hearing and providing an edited videotape to the TLC for use at the OATH hearing—conduct that Plaintiff alleges is attributable to the state for purposes of § 1983. (*Id.*)

"To state a claim under § 1983, a plaintiff must allege two elements: (1) the violation of a right secured by the Constitution and laws of the United States, and (2) the alleged deprivation was committed by a person acting under color of state law." *Williams v. Bronx Cty. Child Support Customer Serv. Unit*, 741 F. App'x 854, 855 (2d Cir. 2018) (summary order) (citation omitted). "Conduct that is formally 'private' may become so entwined with governmental policies or so impregnated with a governmental character that it can be regarded as governmental action." *Fabrikant v. French*, 691 F.3d 193, 206 (2d Cir. 2012) (citation omitted). To plead that the conduct of a private entity can be attributed to the state, the plaintiff may show:

> (1) the entity acts pursuant to the "coercive power" of the state or is "controlled" by the state ("the compulsion test"); (2) when the state provides "significant encouragement" to the entity, the entity is a "willful participant in joint activity with the [s]tate," or the entity's functions are "entwined" with state policies ("the joint action test" or "close nexus test"); or (3) when the entity "has been delegated a public function by the [s]tate," ("the public function test").

*Sybalski v. Indep. Grp. Home Living Program, Inc.*, 546 F.3d 255, 257 (2d Cir. 2008) (alterations in original) (citation omitted). "The fundamental question under each test is whether the private entity's challenged actions are 'fairly attributable' to the state." *Fabrikant*, 691 F.3d at 207 (citations omitted); *see Sykes v. Bank of Am.*, 723 F.3d 399, 406 (2d Cir. 2013) ("The question is whether the private actor's conduct has sufficiently received the imprimatur of the State so as to render it an action of the State for purposes of § 1983." (internal quotation marks and citation omitted)).

"To establish joint action, a plaintiff must show that the private citizen and the state official shared a common unlawful goal; the true state actor and the jointly acting private party must agree to deprive the plaintiff of rights guaranteed by federal law." *Anilao v. Spota*, 774 F. Supp. 2d 457,

498 (E.D.N.Y. 2011) (citations omitted); *Missere v. Gross*, 826 F. Supp. 2d 542, 567 (S.D.N.Y. 2011) ("The touchstone of joint action is often a plan, prearrangement, conspiracy, custom, or policy shared by the private actor and the [state actor]." (citation omitted)).  "[P]leadings asserting joint activity must allege 'specific facts tending to show agreement and concerted action.'" *Stewart v. Victoria's Secret Stores, LLC*, 851 F. Supp. 2d 442, 445 (E.D.N.Y. 2012) (citation omitted).  In cases that arise out of a private party's interaction with law enforcement, "there needs to be something more than an allegation that the private party supplied information, even false information, to the police."  *Del Col v. Rice*, No. 11-CV-5138 (MKB), 2012 WL 6589839, at *8 (E.D.N.Y. Dec. 18, 2012) (collecting cases), *adhered to on reconsideration*, No. 11-CV-5138 (MKB), 2013 WL 4052867 (E.D.N.Y. Aug. 12, 2013); *see Anilao*, 774 F. Supp. 2d at 498.  "[F]acts showing *concerted* action must be alleged, even at the pleading stage, to avoid dismissal." *Stewart*, 851 F. Supp. 2d at 446 (emphasis added) (citation omitted).  "In analyzing whether a private entity acts under color of state law for purposes of § 1983, [the Court] begin[s] by identifying the specific conduct of which the plaintiff complains[.]" *Fabrikant*, 691 F.3d at 207 (internal quotation marks and citation omitted).

Plaintiff alleges that the TLC asked Defendant Mar to obtain the lobby video and that Defendant Mar submitted an "edited, redacted and fabricated" video. (SAC, Dkt. 37, ¶¶ 224, 227.) Here, again, Plaintiff's legal theory is muddled.  Though alleging in the Complaint that Defendant Mar was performing a "public function"[14] (*id.* ¶ 226), Plaintiff argues in his motion briefing that

---

[14] "Under the public function test, 'the exercise by a private entity of powers traditionally exclusively reserved to the [s]tate' can constitute 'state action.'"  *Sybalski*, 546 F.3d at 259 (emphasis and citations omitted).  "This test, which also has been referred to as the 'sovereign-function doctrine,' focuses not on whether the activity delegated to the private entity has been regularly performed by governments, but instead on whether the activity historically has been 'an exclusive prerogative of the sovereign.'" *Grogan v. Blooming Grove Volunteer Ambulance Corps*, 768 F.3d 259, 265 (2d Cir. 2014) (citations omitted).  While Plaintiff does not appear to argue that

Defendant Mar's conduct constituted state action under the "joint action" test (Plaintiff's Opposition Brief to Defendant Mar's Motion to Dismiss ("Pl.'s Mar Opp."), Dkt. 42, at ECF 3– 5).  *See Sybalski*, 546 F.3d at 257 (describing "public function test" and "joint action test" as *alternative* theories for attributing private conduct to the state).  The Court disagrees.

Plaintiff simply fails to plead any facts from which to infer that the TLC acted in concert with Defendant Mar.  The SAC is devoid of any allegation that the TLC knew that the video was edited, much less that the TLC conspired with Defendant Mar to submit an edited video.  Indeed, Plaintiff admits that "[i]t is unclear at this stage of the proceedings if the TLC's prosecuting attorney realized that he was placing an edited tape recording into the administrative record, or if the ALJ knew the same."  (Pl.'s Mar Opp., Dkt. 42, at ECF 4.)  This acknowledgement undermines the plausibility of Plaintiff's claim that the TLC acted jointly with Defendant Mar and renders it mere speculation.  *Cf. Missere*, 826 F. Supp. 2d at 567 ("The touchstone of joint action is often a plan, prearrangement, conspiracy, custom, or policy shared by the private actor and the state actor." (alterations and citation omitted)).  Because Plaintiff has only alleged that Defendant Mar provided fabricated evidence to the TLC and has not alleged any willful collaboration between the TLC and Mar to achieve any unlawful goal, Plaintiff fails to show that Defendant Mar was a state actor.  *See Harrison v. New York*, 95 F. Supp. 3d 293, 325 (E.D.N.Y. 2015) ("Critically absent from the Complaint are any specific facts identifying a 'willful collaboration' between [the state actors] and [the private actor] to deny Plaintiff's constitutional rights . . . .  [S]uch facts must be alleged in the Complaint in order to survive a motion to dismiss." (citations omitted)); *cf. Young v. Suffolk County*, 705 F. Supp. 2d 183, 198–99 (E.D.N.Y. 2010) (finding that factual allegations supporting

---

the provision of information and evidence is a public function traditionally and exclusively reserved to the state, the Court would, in any event, reject that argument.

the claim that the private actor fabricated evidence and *jointly* searched plaintiff's residence with the state actor sufficiently established joint action).

Accordingly, the Court dismisses the Seventh and Eighth Causes of Action against Defendant Mar for failure to state a claim.

## III.     Remaining State Law Claim

Plaintiff asserts a legal malpractice claim against his counsel at the OATH hearing, Defendant Hansen, which is the only remaining state law claim.  Because the Court has dismissed Plaintiff's federal claims, the Court declines to exercise jurisdiction over this state law claim against Hansen.  *See* 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim [if] . . . the district court has dismissed all claims over which it has original jurisdiction."); *Valencia ex rel. Franco v. Lee*, 316 F.3d 299, 305 (2d Cir. 2003) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." (citation omitted)).  Accordingly, the Court does not address the arguments in Defendant Hansen's motion to dismiss and dismisses the claim against him without prejudice.

## IV.     Defendant Mar's Motion for Sanctions

As previously discussed, Plaintiff first brought only state law claims against Defendant Mar (Complaint, Dkt. 1, at ECF 18; First Amended Complaint, Dkt. 22, at ECF 18–19), which Plaintiff later withdrew (Dkt. 36).  In the SAC, Plaintiff asserted new Section 1983 claims against Defendant Mar by essentially re-packaging his withdrawn state law claims for abuse of process and tortious interference as Section 1983 claims.  (SAC, Dkt. 37, ¶¶ 216–47.)  Defendant Mar seeks sanctions against Plaintiff, pursuant to Federal Rule of Civil Procedure 11 ("Rule 11"), based

on "the frivolous and vexatious prosecution" of his federal and state law claims against her. (Defendant Mar's Sanctions Motion Brief ("Sanctions Br."), Dkt. 62-2, at 3.)[15]

Under Rule 11, "[s]anctions may be—but need not be—imposed when court filings are used for an 'improper purpose,' or when claims are not supported by existing law, lack evidentiary support, or are otherwise frivolous." *Ipcon Collections LLC v. Costco Wholesale Corp.*, 698 F.3d 58, 63 (2d Cir. 2012) (citations omitted). "[A]n analysis of the Rule involves two issues: '(1) whether Rule 11 has been violated and (2) whether the court should exercise its discretion to award sanction[s] based on the violation.'" *Braun ex rel. Advanced Battery Techs., Inc. v. Fu*, No. 11-CV-4383 (CM) (DF), 2015 WL 4389893, at *12 (S.D.N.Y. July 10, 2015) (citation omitted).

"When sanctions are sought by a party on motion, Rule 11 violations require only a showing of objective unreasonableness on the part of the attorney or client signing the papers and do not require a showing of bad faith." *Chen v. MG Wholesale Distrib. Inc.*, No. 16-CV-4439 (PKC) (RLM), 2018 WL 2088016, at *1 (E.D.N.Y. May 4, 2018) (internal quotation marks and citation omitted). "[W]hen divining the point at which an argument turns from merely losing to losing and sanctionable, courts must resolve all doubts in favor of the signer of the pleading."

---

[15] "In order to impose sanctions pursuant to its inherent power" or 28 U.S.C. § 1927, "a district court must find that: (1) the challenged claim was without a colorable basis and (2) the claim was brought in bad faith, *i.e.*, motivated by improper purposes such as harassment or delay." *Enmon v. Prospect Cap. Corp.*, 675 F.3d 138, 143 (2d Cir. 2012) (citation omitted); *see Optical Commc'ns Grp., Inc. v. M/V AMBASSADOR*, 938 F. Supp. 2d 449, 465 (S.D.N.Y. 2013) (same), *aff'd*, 558 F. App'x 94 (2d Cir. 2014). Because Defendant Mar does not substantively argue that Plaintiff and his attorney exhibited bad faith, and because Plaintiff and his attorney's actions cannot be said to be "so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose," the Court finds that sanctions are not warranted under either the Court's inherent authority or 28 U.S.C. § 1927. *See Enmon*, 675 F.3d at 143 ("[B]ad faith may be inferred 'only if actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay[.]'" (citation omitted)); *see also id.* at 143–44 ("The showing of bad faith required to support sanctions under 28 U.S.C. § 1927 is 'similar to that necessary to invoke the court's inherent power.'" (citation omitted)).

33

*Umar Oriental Rugs, Inc. v. Carlson & Carlson, Inc.*, 757 F. Supp. 2d 218, 228 (E.D.N.Y. 2010) (internal quotation marks, emphasis, and alterations omitted) (quoting *Rodick v. City of Schenectady*, 1 F.3d 1341, 1350 (2d Cir. 1993)).  "Indeed, sanctions are appropriate only where 'it should have been patently obvious to any attorney who had familiarized himself [or herself] with the law' that the action was frivolous."  *Galin v. Hamada*, 283 F. Supp. 3d 189, 201 (S.D.N.Y. 2017) (citations omitted), *aff'd*, 753 F. App'x 3 (2d Cir. 2018).

"Once a violation of Rule 11 is found, it is within the Court's broad discretion whether to impose Rule 11 sanctions."  *Landmark Ventures, Inc. v. Cohen*, No. 13-CV-9044 (JGK), 2014 WL 6784397, at *5 (S.D.N.Y. Nov. 26, 2014) (citations omitted).  "The standard for imposing Rule 11 sanctions . . . is purposefully high, so as not to stifle legal creativity and zealous advocacy."  *Galin*, 283 F. Supp. 3d at 201 (citations omitted).  In other words, "sanctions decisions are to be made 'with restraint and discretion.'"  *Patrizzi v. Bourne in Time, Inc.*, No. 11-CV-2386 (PAE), 2013 WL 316148, at *4 (S.D.N.Y. Jan. 28, 2013) (quoting *Schlaifer Nance & Co., Inc. v. Estate of Warhol*, 194 F.3d 323, 334 (2d Cir. 1999)).

The Court first notes that Plaintiff's withdrawal of his state law claims initially brought against Defendant Mar does not cure the conduct complained of in her motion for sanctions. Defendant Mar's counsel represents that the first sanctions motion based on Plaintiff's state law claims was served on Plaintiff's counsel on December 9, 2019.  (Rodríguez Declaration, Dkt. 62-1, ¶ 7.)  Plaintiff withdrew the state law claims on February 21, 2020 (*see* Dkt. 36), which is beyond the 21-day safe harbor period.  *See Del Col*, 2013 WL 4052867, at *10 ("Rule 11 requires that the party seeking sanction serve the motion on his adversary and give his adversary 21 days to withdraw the pleading before serving it on the court." (citations omitted)).

As explained above, Plaintiff's federal claims against Defendant Mar were meritless.[16] The weakness of Plaintiff's federal claims should be patently obvious to an attorney who had familiarized himself or herself with the law.  Plaintiff and his attorney's unwillingness to accept the deficiencies in their claims and arguments is objectively unreasonable, especially after the Court expressed its serious doubt with the validity of Plaintiff's federal claims at the February 18, 2020 oral argument.  Nevertheless, the Court does not find that sanctions are warranted in this case.  "A finding that Rule 11 has been violated does not compel the imposition of sanctions." *New V & J Produce Corp. v. NYCCaterers Inc.*, No. 13-CV-4861 (ER), 2014 WL 5026157, at \*6 (S.D.N.Y. Sept. 29, 2014).  "Sanctions under Rule 11 are appropriate only in 'extraordinary circumstances.'"  *Stern v. Regency Towers*, LLC, 886 F. Supp. 2d 317, 327 (S.D.N.Y. 2012) (citation omitted).  While the Court strongly disapproves of Plaintiff and his counsel for their initiation and pursuit of frivolous claims against Defendant Mar, the Court does not find this

---

[16] Plaintiff's prior state law claims were also meritless, as barred by the *Noerr-Pennington* doctrine, which provides protection for, *inter alia*, "activities attempting to influence . . . administrative or judicial action," *EDF Renewable Dev., Inc. v. Tritec Real Estate Co., Inc.*, 147 F. Supp. 3d 63, 68 (E.D.N.Y. 2015), and has been extended to state law claims for tortious interference, *see id.* at 69, and abuse of process, *Toussie v. Allstate Ins. Co.*, No. 15-CV-5235 (ARR) (CLP), 2019 WL 2435852, at \*14 (E.D.N.Y. Feb. 6, 2019).  Although in responding to Defendant Mar's pre-motion conference request, Plaintiff attempted to argue that Defendant Mar was not entitled to immunity because of the sham litigation exception under the *Noerr-Pennington* doctrine (*see* Dkt. 23), that exception is inapplicable here.  The sham litigation exception "applies where the litigation is (1) objectively baseless and (2) intended to cause harm to the defendant through the use of governmental process—as opposed to the outcome of that process."  *T.F.T.F. Cap. Corp. v. Marcus Dairy, Inc.*, 312 F.3d 90, 93 (2d Cir. 2002) (internal quotation marks, emphasis, and citation omitted).  Plaintiff does not claim that he suffered harm as a result of Defendant Mar's filing of a complaint with the TLC or Plaintiff's participation in the TLC hearing process; instead, he contests the outcome of that process, *i.e.*, the revocation of his TLC license. In addition, Defendant Mar's contribution to the TLC proceedings was not objectively baseless, since "[i]t is generally true that a winning lawsuit is a reasonable effort at petitioning for redress and therefore not a sham."  *Id.* at 94 (internal quotation marks and citation omitted).  Therefore, Defendant Mar would be entitled to immunity under the *Noerr-Pennington* doctrine from claims of abuse of process and tortious interference.

conduct rises to the extraordinary level warranting sanctions, given that Plaintiff did withdraw the state law claims after the oral argument.  In addition, "a finding that someone has engaged in sanctionable conduct is a finding that itself carries a sting." *Fu*, 2015 WL 4389893, at *12 (internal quotation marks, alteration, and citation omitted).  However, Plaintiff's counsel, in particular, is cautioned that such unprofessional conduct could easily result in monetary sanctions against her in the future.

Accordingly, the Court denies Defendant Mar's motion for sanctions.

## CONCLUSION

For the reasons stated above, the Court dismisses Plaintiff's claims against the City Defendants and Defendant Mar with prejudice, and dismisses Plaintiff's claim against Defendant Hansen without prejudice.  The Court also denies Defendant Mar's motion for sanctions.  The Clerk of Court is respectfully directed to enter judgment and close the case in accordance with this Memorandum and Order.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: September 24, 2020
         Brooklyn, New York